UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DALE ALLEN JONES                                    CIVIL NO. 04-4839 (DSD/JSM)

     Petitioner,

v.                                                        REPORT AND RECOMMENDATION

CROW WING COUNTY, and
STATE OF MINNESOTA,

     Respondents.

This matter is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254 [Docket No. 1]. Respondents have filed an Answer to the Petition for Writ of Habeas Corpus [Docket No. 8]. This matter was decided on the submissions of the parties.[1]

---

[1]  Petitioner suggested in a letter to this Court [Docket No. 15], that this Court should conduct an evidentiary hearing. However, an evidentiary hearing shall not be held on a claim unless the applicant has failed to develop the factual basis of a claim in the State court proceedings and shows that –

    (A)    the claim relies on –
          (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
          (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and
    (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying defense.

28 U.S.C. § 2254(e)(2). This Court determined that none of these criteria were present here. Therefore, an evidentiary hearing was not held and this case was decided on the written submissions of the parties.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). For the reasons discussed below, it is recommended that Petitioner's Application for a Writ of Habeas Corpus [Docket No. 1] be **DISMISSED WITH PREJUDICE.**

## FACTUAL BACKGROUND

The relevant facts as determined by the Minnesota Court of Appeals are these:[2]

Acting on a tip from an informant, police obtained and executed a warrant in October 2001 to search for evidence of methamphetamine manufacturing on property in Merrifield in Crow Wing County. Four structures were located on the property: a mobile home, a pole barn, a garage or shed, and a smaller shed.

The mobile home's kitchen window was covered with a sheet or a blanket. Inside the kitchen area, police found methamphetamine, bags containing 98.8 grams of ephedrine, and a rubber tub containing a glass jar with a mixture of red phosphorus and methamphetamine. The rubber tub also

---

[2]     In accordance with 28 U.S.C. § 2254(e)(1), the findings of fact made by the Minnesota trial and appellate courts are presumed correct unless rebutted by the Petitioner with clear and convincing evidence. See, e.g., Miller-el v. Cockrell, 537 U.S. 322, 354 (2003) (Thomas, J., dissenting) (finding that "Title 28 U.S.C. § 2254(e)(1) requires that a federal habeas court 'presume' the state court's findings of fact 'to be correct' unless petitioner can rebut the presumption "by clear and convincing evidence") (quoting 28 U.S.C. § 2254); Perry v. Kemna, 356 F.3d 880 (8th Cir. 2004) (concluding that under § 2254(e)(1), a state court's findings of fact "are presumed to be correct absent 'clear and convincing evidence' to the contrary" presented by the petitioner); see also Sumner v. Mata, 449 U.S. 539, 547 (1981) (stating that "[s]ection 2254(d) by its terms . . . applies to factual determinations made by state courts, whether the court be a trial court or an appellate court"); Alston v. Redman, 34 F.3d 1237, 1242 (3d Cir. 1994) (concluding that "[t]here is a presumption that historical fact-finding by a state court, whether trial or appellate, is correct"); Steele v. Young, 11 F.3d 1518, 1520 n.2 (10th Cir. 1993) (holding that "[e]xplicit and implicit findings of historical facts by the state trial and appellate courts are presumed correct"). In any event, the Court notes that neither party provided this Court with a copy of the transcript from the trial. Consequently, any review of the facts was necessarily confined to the pleadings filed by the parties, i.e. the Minnesota Court of Appeals decision, and the Petition for Review of the Decision of the Court of Appeals, Appellant's Brief to the Court of Appeals, and Appellant's Pro Se Supplemental Brief to the Court of Appeals. [Docket No. 1].

held lye, a strainer, drain cleaner, vinyl tubing, a mixing spoon, and containers of Heet antifreeze. In the kitchen refrigerator, police found a large glass jar containing a coffee filter and an orange liquid that tested positive for methamphetamine. A plastic pitcher in the refrigerator was filled with a similar orange liquid. In the living-room area, police found a beer can containing a coffee filter in a liquid that similarly tested positive for methamphetamine and cups containing orange liquid.

The police seized evidence from the mobile home's three bedrooms. From one bedroom, they seized an Internet article on "How to Make Crank," a dish containing hypodermic needles, a glass jar containing liquid methamphetamine, and identification material for one of the occupants who was present during the search. From a second bedroom, police seized identification documents for another person who was present during the search. In the third bedroom, police found a black leather jacket. From a pocket of the jacket, police seized a plastic bag with coffee filters that held methamphetamine.

When the warrant was executed, Jones was in the small shed. From the same shed, police seized a four-ounce container of iodine crystals. The container had a green label that identified its source as BME Labstore, St. Paul, Minnesota, with a telephone number for the store. Outside the small shed, police found two bottles of acetone. Next to a garbage can, police found plastic gloves and vinyl tubing. In back of the outbuildings, police found a fifty-five-gallon drum of toluene.

The state charged Jones with first-degree controlled-substance crime under Minn. Stat. §§ 152.021, subds. 2a, 3(a), and 609.05 (2000) (aiding and abetting methamphetamine manufacture); Minn. Stat. §§ 152.021, subds. 2a, 3(a), and 152.096 (2000) (conspiracy to manufacture methamphetamine); and Minn. Stat. §§ 152.021, subd. 2(1), and 609.05 (2000) (aiding and abetting possession of methamphetamine).

At Jones's jury trial, an employee of the BME Labstore in St. Paul testified that Jones had purchased more than two pounds of iodine crystals in the six-month period immediately before the warrant was executed. The most recent purchase was only two weeks before the warrant's execution. Jones's mother testified that Jones had been living at home but left with one of the occupants of the Merrifield house to stay with him for a week to fish and to look for work. She testified that when Jones left home he was wearing a leather coat, but the friend he left with wanted to buy the coat.

The district court permitted the state to introduce two incidents as Spreigl evidence: the first, admitted for the purpose of establishing motive for manufacture, was Jones's 2001 conviction of fifth-degree methamphetamine possession in Rice County. The second, admitted to

3

show knowledge and intent, was a March 2003 incident that involved Jones's purchase of ephedrine and possession of items used in the process of methamphetamine manufacture.

The district court denied the defense's motion for acquittal, and the jury found Jones guilty of all three counts. The court imposed sentence only on the conspiracy-to-manufacture charge. In this appeal Jones challenges the (1) admissibility of the Spreigl incidents, and (2) the sufficiency of the evidence to establish that he entered into a conspiracy to manufacture methamphetamine. In a pro se brief, he raises fifteen additional issues.

State v. Jones, No. A03-1136, 2004 Minn. App. LEXIS 951, at *2-5 (Minn. Ct. App. Aug. 17, 2004).

On December 7, 2001, the Minnesota Court of Appeals denied Petitioner's appeal on the following grounds: that the district court did not abuse its discretion in admitting evidence of Jones's 2001 conviction and the conduct in the 2003 incident; that the jury could rationally find that the state had proved beyond a reasonable doubt that Jones had conspired with others to manufacture methamphetamine; and that Petitioner's fifteen additional challenges in his pro se supplemental brief (including the constitutionality of the stop in the second Sprieigl offense, issuance of the search warrant for the Merrifield property, unfair prosecution, violation of his right to speedy trial, challenges to the jury's determination on possession, challenges to the facts as found by the jury, presence of the armed guard in the courtroom, and ineffective assistance of counsel) did not rise to the level of obvious prejudicial error. Petitioner's subsequent Petition for Review to the Minnesota Supreme Court was denied on October 20, 2004. App. to Resp't Mem., Ex. 2.

Following the denial of the Petition for Review, Petitioner filed this Petition for Writ of Habeas Corpus alleging five errors committed by the trial court in violation of federal law and the Constitution: (1) that his conviction was obtained by use of evidence

4

gained pursuant to an unconstitutional search; (2) that he was not involved in an agreement to manufacture methamphetamine; (3) that he was denied effective assistance of counsel; (4) that evidence found in another person's bedroom against him by police should not have been used against him; and (5) that the Spreigl evidence should not have been admitted into evidence.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

In addition, 28 U.S.C. § 2254 provides that a habeas corpus petition:

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Court of Appeals for the Eighth Circuit has described the review under § 2254(d): Under the "contrary to" clause of § 2254(d)(1), the writ may be granted if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than the Supreme

Court has on a set of materially indistinguishable facts.  See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of the prisoner's case.  See Copeland, 232 F.3d at 973.

Therefore, "[a] federal court may not grant a petition under 28 U.S.C. § 2254 unless the court concludes that the state court adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court . . . or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(d); Williams, 529 U.S. at 362). Under this standard, the federal court "must deny a writ – even if we disagree with the state court's decision – so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

With this standard of review in mind, this Court now reviews the Petition.

## DISCUSSION

## I.    Petitioner's Challenge to Constitutionality of Search

In Ground One, Petitioner asserted that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search.  Petition, Ground One, at 4.  In this regard, Petitioner stated that the search warrant executed at the Merrifield property

6

was a violation of his right to privacy, his name was not on the warrant, and he was not in the house when the house was searched.  Id.

In response, the Government argued that the Minnesota Court of Appeals properly held that there was no error in the issuance of the search warrant.  Resp't Mem., at 20.  According to the Government, the Court of Appeals had found that Petitioner had waived his omnibus hearing where the issue could have been raised and that the record did not disclose any evidence that the information obtained from the informant was unreliable.  Id.

The Court finds that Petitioner's Fourth Amendment claim is not properly before this Court.  Fourth Amendment claims are not cognizable in federal habeas proceedings if the state provided the petitioner an opportunity for the full and fair litigation of such claims.  Stone v. Powell, 428 U.S. 465 (1976).  "The Eighth Circuit uses a two-part test to determine if a full and fair opportunity to litigate a claim has been provided."  Wilson v. State, No. CIV. 00-1194 JRTJGL, 2002 WL 1752208, at *2 (D. Minn. July 29, 2002) (citing Willett v. Lockhart, 37 F.3d 1265 (8th Cir. 1994)).  In this regard, "a Fourth Amendment habeas corpus claim is barred by Stone v. Powell unless: 1) 'the state provided no procedure by which the prisoner could raise his Fourth Amendment claim' or 2) 'the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system.'"  Wilson, 2002 WL 1752208, at *2 (quoting Willett, 37 F.3d at 1273).  As to the first part of this test, the Eighth Circuit has stated that it finds "petitioner's 'opportunity' for full and fair litigation should not depend upon whether he has taken advantage of the process available."  Willett, 37 F.3d at 1271.  Further, "[t]he federal courts on habeas review of such claims are not to consider

whether full and fair litigation of the claims in fact occurred in the state courts, but only whether the state provided an opportunity for such litigation." Id.

In this case, Petitioner had an opportunity, through an omnibus hearing at the state trial court level, to address his argument that the search warrant was unconstitutional, but failed to do so.  Further, there is nothing before this Court to suggest that Petitioner was foreclosed from using any procedure, including the omnibus hearing, for any reason, much less because of an unconscionable breakdown in the system.  Therefore, this Court finds that Petitioner is not entitled to relief on Ground One of his Petition.

## II.    Legal Sufficiency of the Evidence Presented Against Petitioner

In Grounds Two and Four, Petitioner challenged the evidence presented against him on the charges of Conspiracy to Commit Controlled Substance Crime in the First Degree/Manufacture and Controlled Substance Crime in the First Degree/Possession. Specifically, Petitioner claims he did not have an agreement with anyone to manufacture methamphetamine and that evidence found in another person's bedroom could not be used against him.  Petition, Grounds Two and Four, at 4, 6.

According to the United States Supreme Court, the critical inquiry in reviewing the sufficiency of the evidence for a criminal conviction is:

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282 (1966)) (emphasis in original).

Consistent with this articulation of our role in a habeas case by the Supreme Court, the Eighth Circuit has described the standard of review of insufficiency of the evidence claims as follows:

> Our standard of review is as narrow as it is well-established: This court must view the evidence in the light most favorable to the government and sustain the verdict if it is supported by substantial evidence.  Moreover, on appeal, the government must be given the benefit of all inferences that may logically be drawn from the evidence.  It is not necessary that the evidence exclude every reasonable hypothesis except guilt; instead, the evidence is simply sufficient if it will convince a trier of fact beyond a reasonable doubt that the defendant is guilty.  This court will not disturb a conviction if the evidence rationally supports two conflicting hypotheses. Each of the elements of the crime charged may be proven by circumstantial evidence, as well as by direct evidence.  And finally, this court must keep in mind that the standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly.

Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996) (quoting United States v. Brown, 921 F.2d 785, 791 (8th Cir. 1990)).  "Our function as an appellate court is not to re-weigh the evidence.  To the contrary, we must accord 'great deference' where a state appellate court has found the evidence supporting the conviction constitutionally sufficient," as is the case here.  Id. (citations omitted); see also Blair-Bey v. Nix, 44 F.3d 711, 713 (8th Cir. 1995) (finding that, in evaluating claims that the evidence was insufficient to find guilt, courts must examine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"); Redding v. State, 881 F.2d 575, 578 (8th Cir. 1989)(holding that in "evaluating sufficiency of the evidence in habeas corpus petitions, we view the evidence in the light most favorable to the prosecution and

9

determine 'whether <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'") (citations omitted) (emphasis in original).

### A.      Agreement to Manufacture Methamphetamine

In his challenge of the sufficiency of the evidence supporting his conviction of Conspiracy to Commit Controlled Substance Crime in the First Degree/Manufacture, Petitioner has asserted that he did not enter into an agreement to manufacture methamphetamine.   In support of this claim, Petitioner states that he did not know methamphetamine was being manufactured at the Merrifield residence, and he did not help manufacture the methamphetamine.   Petition, Ground Two, at 4.   Petitioner also asserted that he did not own the leather jacket found in the residence, and that while he had bought iodine crystals in the past, the jar of iodine crystals found in the shed on the property did not belong to him.   <u>Id.</u>

In Minnesota, an individual is guilty of a controlled substance crime in the first degree if the person manufactures any amount of methamphetamine.   Minn. Stat. § 152.021, subdivision 2a.   Further, "[a]ny person who conspires to commit any act prohibited by this chapter, . . . , is guilty of a felony and upon conviction may be imprisoned, fined, or both, up to the maximum amount authorized by law for the act the person conspired to commit.   Minn. Stat. § 152.096.   A conspiracy exists when a person "conspires with another to commit a crime and in furtherance of the conspiracy one or more of the parties does some overt act in furtherance of such conspiracy . . ."   Minn. Stat. § 609.175 (2000).   In order to prove a conspiracy, the government must demonstrate "(1) an agreement with another to commit a crime, and (2) an overt act in furtherance of the conspiracy."   <u>State v. Olkon</u>, 299 N.W.2d 89, 104 (Minn. 1980).

"Proof of a formal agreement to commit a crime is not required for a conspiracy conviction."  State v. Hatfield, 639 N.W.2d 372, 376 (Minn. 2002) (citing State v. Burns, 215 Minn. 182, 189, 9 N.W.2d 518, 521 (1943)).

The conclusion of the Minnesota Court of Appeals that the evidence was legally sufficient to support the finding that Petitioner entered into an agreement with another to manufacture methamphetamine is not an unreasonable determination of the facts based on the evidence as a whole.  The evidence established that methamphetamine was being manufactured at the Merrifield residence and that Petitioner was residing there at the time of the arrest and seizure of the methamphetamine and of the ingredients and paraphernalia associated with a manufacturing operation.   In this regard, a methamphetamine lab and methamphetamine were found in the common areas of the residence, in addition to the ingredients for the manufacturing of methamphetamine discovered in the common areas and on the property outside the mobile home.  Further, based on the facts articulated by the Court of Appeals, the evidence supported Petitioner's role in the manufacture of the methamphetamine. Petitioner had purchased more than two pounds of iodine crystals in the six-month period from BME Labstore before the search warrant was executed, and most recently just two weeks before his stay at the Merrifield residence.[3]  At the time Petitioner was arrested, police seized a four-ounce container of iodine crystals in the shed where he was found.  This container had the label BME Labstore on it.  In addition, police found in

---

[3]    According to the Government, the testimony at trial was that Petitioner had bought eight ounces of iodine crystals from BME Labstore on September 27, 2001.  See Resp. Mem. at 4, citing T. 246.

a bedroom on the premises a black leather jacket that had been owned by Petitioner.[4] In the pocket of this jacket, police seized a plastic bag with coffee filters that held methamphetamine. While Petitioner claimed that he had sold the jacket to one of the other occupants of the premises, and thus, the contents of the jacket did not belong to him, the Court of Appeals indicated that Petitioner's mother had testified that when Petitioner had left her home to go the Merrifield property, he was wearing the jacket.

Based on all of these facts, a jury could reasonably conclude that methamphetamine was manufactured during Petitioner's stay at the Merrifield residence and that Petitioner knew of and had agreed to participate in the endeavor as evidenced by his purchase of the iodine crystals discovered in the shed where he was arrested and the presence of methamphetamine in the black leather jacket.

Viewing the evidence in the light most favorable to the prosecution, this Court concludes that a rational trier of fact could have concluded that the essential elements of the crime of Conspiracy to Commit Controlled Substance Crime in the First Degree/Manufacture was proven beyond a reasonable doubt. Therefore, the conclusion that the evidence was legally sufficient to sustain Petitioner's conviction is not an unreasonable determination of the facts based on the evidence as a whole. See 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner's claim for relief on this ground should be rejected.

---

[4]     The Government stated in its opposition brief that officers had testified that they believed that Petitioner had occupied the bedroom where the jacket was found based on information they had obtained from interviews. Resp't Mem. at 3, 12, citing T. 125, 127. There was no mention of this testimony by the Court of Appeals in its decision, and the Government did not supply the transcript to the Court for review.

### B.     Possession of Controlled Substances

In Ground Four, Petitioner claimed that evidence found in another person's bedroom and in the common areas of another's house could not be used to support the conviction that he was in possession of a controlled substance. Petition, Ground Four, at 6. In this regard, Petitioner asserted that Chet Secor, a person residing in the mobile home on the Merrifield property, could lock his bedroom from the inside or the outside, and therefore the coffee filters, drugs, needles, and instructions on how to make crank found in his bedroom could not be used against Petitioner because Petitioner had no control over the bedroom. Id. Petitioner further stated that the fruit drink that contained drugs in Secor's refrigerator could not be used against Petitioner because it was not Petitioner's fruit drink—he did not have any say over it, and could not drink it any time he wanted. Id.

In response, the Government argued that the evidence was sufficient to support a finding that Petitioner possessed controlled substances. In this regard, the Government asserted that the Minnesota Court of Appeals properly found that Petitioner's argument failed to take into account the doctrine of constructive possession.[5]

As a preliminary matter, this Court notes that the basis for Petitioner's challenge to the jury's finding that he was in possession of methamphetamine is not clear from the

---

[5]     Additionally, the Government argued that Petitioner was not sentenced on the charge of Controlled Substance Crime in the First Degree/Possession, and therefore his claim is without merit on this basis. The Government cited no law or facts to support this proposition. The Court does observe that as the conviction may be used to enhance a future sentence, a challenge to the conviction in a habeas proceeding may be meritorious. See Minn. Stat. § 609.1095, subd. 2 (Minnesota's "Increased sentences for certain dangerous and repeat felony offenders" statute).

Petition.  For example, if Petitioner is claiming that the Court of Appeals' conclusion that he was in constructive possession of methamphetamine was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court, that claim is rejected.  First, Petitioner did not allege that the jury's finding of possession violated some article of the Constitution or laws or treaties of the United States, as required by 28 U.S.C. § 2254(a).  Second, "[f]ederal habeas corpus relief does not lie for errors of state law."  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States."  Id. at 67-68; see Wood v. Lockhart, 809 F.2d 457, 459 (8th Cir. 1987) ("questions relating to the admissibility of evidence are matters of state law and are generally not cognizable in an action for habeas corpus"); Glaze v. Redman, 986 F.2d 1192, 1195 (8th Cir. 1993) (same).  "[Q]uestions concerning the admissibility of evidence are matters of state law, and are reviewable in federal habeas corpus proceedings only when the alleged error infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process."  Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir. 1984).  Petitioner has made no allegation or showing that the Court of Appeals' conclusion that he was in constructive possession of methamphetamine violated some constitutional principal or was so prejudicial that it amounted to a denial of due process.

Similarly, to the extent Petitioner is claiming that the evidence found in Secor's bedroom or Secor's refrigerator should never have been admitted as evidence against

him in the state trial proceeding, this claim is also rejected.   Petitioner has not articulated how (nor can this Court find any basis for concluding) the admission of the evidence found in Secor's bedroom and in the refrigerator constitutes a violation of a federal constitutional principal or rises to the level of a due process violation.

Finally, to the extent that Petitioner is challenging the sufficiency of the evidence to support the conclusion that he was in constructive possession of a controlled substance, viewing the evidence in the light most favorable to the prosecution, this Court finds that a rational trier of fact could have concluded that Petitioner was in constructive possession of methamphetamine.

"A person is guilty of possession of a controlled substance if she knew the nature of the substance and either physically or constructively possessed it."   State v. Denison, 607 N.W.2d 796, 799 (Minn. Ct. App. 2000) (citing State v. Florine, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975)).   "A person may constructively possess a controlled substance along or with others."   Id. (citing Commissioner of Revenue v. Fort, 479 N.W.2d 43, 46 (Minn. 1992).  Constructive possession may be proved by showing either "(a) that the police found the substance in a place under defendant's exclusive control to which other people did not normally have access, or (b) that, if police found it in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it." Florine, 303 Minn. at 104-05, 226 N.W.2d at 611. "The purpose of the constructive-possession doctrine is to include within the possession statute those cases where the state cannot prove actual or physical possession at the time of arrest but where the inference is strong that the defendant at one time physically possessed the substance

15

and did not abandon his possessory interest in the substance but rather continued to exercise dominion and control over it up to the time of the arrest." Id. at 610-11.  The Court looks to the totality of the circumstances to assess whether constructive possession had been proved.  See Denison, 607 N.W.2d 800.

The evidence presented at trial indicated that Petitioner did not have exclusive control over the Merrifield property where the drugs were found, and that others were staying on the property in addition to Petitioner.   Therefore, in light of these circumstances the Court must determine whether there is a strong probability that defendant was consciously exercising dominion and control over the methamphetamine up to the time of his arrest.  According to the Court of Appeals, the police found in a third bedroom of the mobile home, a black leather jacket.   Jones, 2004 Minn. App. LEXIS 951, at *3.  In the pocket of that jacket, the police seized a plastic bag with coffee filters that held methamphetamine.  Id.  Petitioner's mother testified that when Petitioner left her home, he was wearing the leather jacket, and that he went with one of the occupants of the Merrifield house to stay with him for a week.  Id. at 4.  Additionally, in the common areas of the home, the police found methamphetamine and the substances used to make methamphetamine; in the refrigerator police found a glass jar with a coffee filter and an orange substance that tested positive for methamphetamine, and a plastic pitcher with a similar orange substance; and, in the living room the police found a beer can containing a coffee filter in a liquid that tested positive for methamphetamine and cups containing the orange liquid.  Id. at 2.

Viewing the evidence in the light most favorable to the prosecution, this Court finds that a rational trier of fact could have concluded that Petitioner was in constructive

16

possession of a controlled substance by his residence in the Merrifield house, proximity to the methamphetamine and methamphetamine operation, and the presence of methamphetamine in the black leather jacket that had been owned by him.  Therefore, the conclusion of the jury that the evidence was legally sufficient to sustain Petitioner's conviction of aiding and abetting in the possession of a controlled substance is not an unreasonable determination of the facts based on the evidence as a whole.  See 28 U.S.C. § 2254(d)(2).  Accordingly, Petitioner's claim for relief on this ground should be rejected.

## III.    Ineffective Assistance of Counsel

In his appeal to the Minnesota Court of Appeals, Petitioner argued that "his attorney failed to investigate his status as a visitor on the Merrifield property, failed to obtain a speedy trial, and failed to object to the testimony of the employee from whom Jones purchased iodine at the BME Labstore." State v. Jones, 2004 Minn. App. LEXIS 951, at *18-19.  In his Petition to this Court, Petitioner claimed that he was denied effective assistance of counsel because Petitioner did not know if his counsel should have objected.[6]  In response, the Government interpreted Petitioner's claim to mean that he was denied effective assistance of counsel because his lawyer did not raise objections to evidence.  Resp't Mem. at 18.  The Government then argued that because Petitioner did not raise the issue of his attorney's failure to object to evidence on direct

_____

[6]     Specifically, Petitioner stated that "if my lawyer should of objected and didn't how am I supost to no and when I did ask questions he told me to shut up."  Petition, Ground Three, at 6.

Jones R&R doc

appeal, Petitioner had not exhausted this claim.[7]   In the alternative, the Government addressed Petitioner's claim by arguing that because Petitioner had failed to specifically identify where his trial counsel had failed to object during the course of his trial and failed to cite to any specific facts or legal authority for his position, his request for habeas relief must be denied.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).  To state a claim for ineffective assistance of counsel, Petitioner "must demonstrate that (1) 'counsel's representation fell below an objective standard of reasonableness;' and (2) 'the deficient performance prejudiced the defense.'"  Miller v. Dormire, 310 F.3d 600, 602 (8th Cir. 2002) (quoting Strickland, 466 U.S. at 687-88).  "To satisfy the second part of the Strickland test, the petitioner must prove that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Garrett v. Dormire, 237 F.3d 946, 950 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694); Miller, 310 F.3d at 602 (same).  In ineffective assistance of counsel claims, there is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy. Strickland, 466 U.S. at

---

[7]     The implication of the Government's exhaustion argument was that because this claim was not adjudicated by the Minnesota Supreme Court, the Petition amounted to a mixed petition and should be dismissed on this basis.  Resp't Mem. at 18-19.  It is true that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies for all of his claims.  28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982).  It is also true that generally, a "mixed petition"—i.e., one that includes both exhausted and unexhausted claims—will be dismissed for non-exhaustion.  Rose, 455 U.S. at 510, 522.  However, for the reasons discussed infra, the Court concludes that Petitioner did exhaust his ineffective counsel claim and therefore, this Petition is not a mixed petition.

689; <u>Collins v. Dormire</u>, 240 F.3d 724, 727 (8th Cir. 2001) (in determining whether counsel's performance was deficient, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....") (quoting <u>Strickland</u>, 466 U.S. at 689).

The Court interprets Petitioner's claim that his counsel failed to object to mean that his attorney failed to object to the testimony of the employee from whom Jones purchased iodine at the BME Labstore, and that Petitioner has indeed exhausted his ineffective assistance of counsel claim.  Having considered his claim exhausted, the Court nevertheless finds that Petitioner has failed to demonstrate that his attorney's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense.  This is because Petitioner has provided no facts to support his claim for ineffective assistance of counsel.  The only facts of which this Court is aware that bear on this claim are those found in the opinion of the Minnesota Court of Appeals, where the court indicated that Petitioner's attorney had requested a continuance for the late disclosure of the Labstore employee as a witness.  <u>Jones</u>, 2004 Minn. App. LEXIS 951, at *19.  While some attorneys may have objected to the testimony of a belatedly disclosed witness, requesting a continuance to address the substance of the witness's testimony is also an appropriate response and does not fall below an objective standard of reasonableness.

Having failed to further articulate examples of when and to what his counsel failed to object and what impact such failures had on the outcome of his case, this Court concludes that the state court adjudication of his ineffective counsel claim was not

19

contrary to, or involved an unreasonable application of, clearly established federal law. Petitioner's ineffective counsel claim should be denied.

## IV.    Trial Court's Admission of 404(b) Evidence

In Ground Five, Petitioner claimed that <u>Spreigl</u> evidence should not have been admitted into the trial court proceeding against him.   Petition, Ground Five, at 5. Petitioner specifically objected to the use of the subsequent March 2003 arrest and drug charge at trial, which arose out of Petitioner's purchase of three packages of cold medicine from a Target store.  According to Petitioner, the Target security guard called the police who followed Petitioner to a Holiday store.  At the Holiday store, Petitioner threw a brown bag into the garbage.  About an hour later, the police officer called the Target security guard to collect the brown bag that Petitioner had thrown into the garbage at the Holiday store.  Petitioner claims that the Target security guard pulled someone else's bag out of the garbage can, and the items found in the bag—some burnt aluminum foil and cut matches—did not belong to him.  Therefore, Petitioner argued that because the items did not belong to him, they should not have been used against him at trial.

In response, the Government reiterated the findings of the Minnesota Court of Appeals that the evidence from the subsequent arrest was relevant and probative of defendant's knowledge and intent.   In this regard, the Government argued that Petitioner had been in close proximity to precursors that had been altered consistent with manufacturing methamphetamine.  Further, once Petitioner claimed that he did not knowingly possess anything illegal and that he did not knowingly participate in the manufacture of mehtamphetamine, the evidence was relevant because it served to

20

complete the picture of him.  Finally, the Government argued that the trial court gave two limiting instructions—one instruction prior to the admission of the evidence and a second instruction during final instructions to the jury—and the instructions worked to cure any unfair prejudice that may have occurred by the admission of 404(b) evidence.

As previously discussed, in a habeas proceeding, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States, and federal habeas corpus relief does not lie for errors of state law.

Here, the state courts determined that the evidence surrounding a subsequent March 2003 arrest and drug charge was admissible to show intent and knowledge. Jones, 2004 Minn. App. LEXIS 951, at *9-11.  Petitioner did not assert in the state court proceeding that the trial court's admission of March 2003 arrest and drug charge infringed upon a specific constitutional protection.  Consequently, Petitioner's claim cannot be considered in this proceeding because his claim was submitted and decided solely in the state courts based on state law principles.  See McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("before we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court")).

Similarly, Petitioner did not asserted in the instant Petition how his claim—that Spreigl evidence should not have been admitted in the state court proceeding against him—is based on a federal constitutional principal or was so prejudicial that it amounted to a denial of due process.  Having failed to articulate a cognizable basis for his challenge to the admissibility of the Spreigel evidence, it cannot be considered in this Petition.  See Cross v. Bruton, No. Civ. 99-631 ADMJGL, 2000 WL 34502597, at *7 (D.

Minn. June 23, 2000) (finding that Petitioner's claim that 404(b) evidence should have been excluded from trial proceeding could not be properly raised or addressed in a federal habeas proceeding because the claim was not based on any federal constitutional principle).

For all of these reasons, this Court recommends that Ground Five in the Petition be dismissed.

## **RECOMMENDATION**

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that Petitioner's Application for a Writ of Habeas Corpus [Docket No. 1] be **DISMISSED WITH PREJUDICE**.

Dated:        June 28, 2006

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **July 17, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.